UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>JOSE PINEDO<br>KEVIN BILLS<br>MIGUEL GONZALEZ, and<br>DANIEL ESPARZA-CABRERA | No. 15 CR 262-4<br><br>Judge Thomas M. Durkin |

**GOVERNMENT'S MEMORANDUM
REGARDING DEFENDANTS' RELATIVE CULPABILITY**

The Court has requested that the government file a memorandum that outlines the government's position regarding the relative culpability of the four defendants. *See* Dkt. # 173. As outlined in more detail below and in the Government's Versions of the Offense that have been provided to U.S. Probation for each of the defendants, it is the government's position that defendant Miguel Gonzalez is the most culpable of the four defendants, that Jose Pinedo and Daniel Esparza-Cabrera each worked with Gonzalez to possess with intent to distribute and distribute narcotics, and that Kevin Bills was a wholesale narcotics customer who began obtaining narcotics first from Pinedo and then Pinedo and Gonzalez in the months before this case was charged.

**Miguel Gonzalez**

Gonzalez was the focus of a good portion of the government's investigation and is viewed as the most culpable of the four defendants. Gonzalez has been convicted of a multi-year conspiracy to possess with intent to distribute and distribute controlled substances. During the course of the investigation, wire and electronic

1

communications involving Gonzalez and others were intercepted, showing Gonzalez's role as a wholesale buyer and seller of cocaine. Gonzalez is a sophisticated narcotics trafficker, acquiring new telephones on a 28 day basis in an attempt to evade detection. Over the years of his drug trafficking activity, he acquired a number of wholesale customers of his. As outlined in his plea agreement, starting in 2011, Gonzalez began cocaine to one individual (Individual A), through whom Gonzalez eventually met Pinedo. That relationship led to a long-term conspiracy between Gonzalez and Pinedo. Though Pinedo was initially a kilogram-quantity customer, he and Gonzalez eventually began working together to obtain and then distribute kilogram quantities of cocaine to others. Gonzalez and Pinedo regularly introduced new sources of supply and customers to one another to sustain their drug trafficking activities.

Kevin Bills is one such customer of Gonzalez and Pinedo – Bills dealt initially with Pinedo, but eventually purchased cocaine from both of them, with Gonzalez extending credit to Bills based on Bills' past dealings with Pinedo. Gonzalez was clearly calling the shots in their relationship, though. As evidenced in the Criminal Complaint in this case, when Bills requested a lower price for the cocaine, Pinedo called Gonzalez and arranged a meeting between Pinedo and Gonzalez so that Pinedo could put Gonzalez on the phone to discuss the pricing. Dkt. # 1, ¶¶ 10-13.[1]

Gonzalez also employed various couriers to distribute his narcotics for him – such couriers were intercepted during surveillance of his wire and electronic

---

[1] Gonzalez is Individual A in the Criminal Complaint.

communications. As a result of one such interception, agents observed a courier working for Gonzalez provide a quantity of cocaine to Fredy Navarro that eventually led to Navarro's indictment in 16 CR 373 (Tharp, J.). Specifically, on February 27, 2014, agents observed Gonzalez hand a brick-like object to an unidentified courier, who agents observed later meet with Navarro and provide the same brick-like object. When agents recovered the same brick-like object from Navarro later that day, it was revealed to contain approximately 744 grams of cocaine.

Despite the working relationship between Gonzalez and Pinedo, that was far from Gonzalez's only meaningful narcotics trafficking relationship. In May 2015, Gonzalez was arrested as he prepared to purchase wholesale quantities of cocaine with Ruven Villarial and Gustavo Perales (his co-defendants in 15 CR 253). Gonzalez, Villarial, and Perales arranged a six kilogram cocaine transaction for which Perales had flown to Chicago from New Mexico to help coordinate. Gonzalez brought more than $120,000 for the purchase of four kilograms, with the expectation that he could obtain the additional two kilograms on credit, which he would repay after he could complete enough sales. That Gonzalez was communicating with numerous drug trafficking associates, many of whom remain unidentified, to sustain his narcotics business makes clear why he was charged in two separate indictments in short order.

### Jose Pinedo

As outlined above, Pinedo conspired and worked with Gonzalez over the course of a number of years to obtain and distribute kilogram-quantities of cocaine. While the evidence did not show the same level of sophistication by Pinedo that was evidenced by Gonzalez, Pinedo was able to find wholesale narcotics customers (like Kevin Bills) and had his own relationships with a number of other narcotics targets (such as Individual B in the Criminal Complaint). Additionally, while law enforcement was intercepting Pinedo's communications at the same time Gonzalez was arranging his six kilogram transaction with Villarial and Perales, law enforcement did not have any information that Pinedo was involved in that offense. Pinedo was a long term drug trafficker who was able to find his own clients and sources of supply outside of Gonzalez's network, but relative to Gonzalez, he is the less culpable of the two individuals in that narcotics trafficking conspiracy.

### Kevin Bills

Bills' role in this case is as a repeat, wholesale customer of Gonzalez and Pinedo. Bills had previously purchased cocaine from Gonzalez and Pinedo, and was intercepted during the course of the investigation discussing the purchase of cocaine. Those intercepted calls made clear that Pinedo and Bills were familiar with one another and were comfortable engaging in a transaction for a significant quantity of cocaine. After a series of calls, Bills, who lives in Milwaukee, traveled to Pinedo's family home in Chicago to obtain approximately three kilograms of cocaine. A week later, Bills again traveled to Chicago to obtain another three kilograms of cocaine for

distribution, one of which he was obtaining on credit. This time, law enforcement was able to arrest Bills in the vicinity of Pinedo's family home, recovering approximately $70,551 (enough for two kilograms of cocaine) from Bills' vehicle. Bills was clearly obtaining these multi-kilogram quantities of cocaine for later redistribution in Milwaukee to his own wholesale or retail customers. Still in comparison to Gonzalez and Pinedo, Bills is relatively less culpable in the larger investigation at issue in this case.

### Daniel Esparza-Cabrera

Esparza-Cabrera's criminal conduct in the indictment is limited to a single distribution in 2013, in which he sold a half-kilogram quantity of cocaine to an undercover agent after a series of telephone calls and negotiation. It is worth noting, though, that during the conversations with the undercover agent, Esparza-Cabrera moved the location of the transaction because he detected law enforcement surveillance, referenced the quality of the cocaine, offered a significant discount on the price, and discussed supplying better quality cocaine to the undercover agent in the future, making it clear that he was neither new to narcotics trafficking nor reluctant to participate. More critically, to obtain the cocaine, Esparza-Cabrera had to go to a residence in Hammond, Indiana where he and Gonzalez stored cocaine. Esparza-Cabrera retrieved the cocaine from that location and after his arrest provided keys to the residence to law enforcement. When agents searched that home immediately after his arrest, they found approximately 2.4 kilograms of powder cocaine and approximately 4.4 grams of crack cocaine, as well as various implements

associated with narcotics trafficking, such as digital scales, kilo wrappers, and a kilo press. Though he was charged with the distribution to the undercover agent, his language and actions during the interactions with the undercover agent, as well as his access to a drug stash house, make clear that he was not a one-time drug trafficker.

<u>Sentencing Order</u>

Because the Court indicated during a September 14, 2017 hearing that it wishes to sentence the defendants in order of culpability, it is the government's position that Gonzalez should be sentenced first. His sentencing is currently set for December 12, 2017. Bills is currently set to be sentenced on January 24, 2018. Esparza-Cabrera and Pinedo, the latter of whom has a status date on September 27, 2017, both need sentencing dates, which may scheduled any time after Gonzalez's sentencing.

                Respectfully submitted,
                JOEL R. LEVIN
                Acting United States Attorney

By:   /s/ *Yasmin N. Best*
       YASMIN N. BEST
       Assistant United States Attorney
       219 S. Dearborn Street, Fifth Floor
       Chicago, Illinois 60604
Dated: September 22, 2017        (312) 353-5300